The Honourable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honourable Court may give their attendance and they shall be heard. God save the United States of America and this Honourable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Ming-Shu Chang et al. v. Merrick v. Garland, Appeal No. 21-1496. Attorney Yang, please introduce yourself for the record and proceed with your argument. Good morning, Your Honours. Sarah Yang for the petitioners. Before I start, I wish to point out to this Honourable Court, I was not the attorney on the and the previous proceedings. I represented the petitioners in their motion to reopen with the BIA after this petition has been filed and briefed based on ineffective assistance of counsel and other evidences. So I just want to point out to the Court the background and the difficulties I'm facing and also can I reserve one minute for rebuttal? Yes. The petitioners in this case were born, raised, educated, employed, lived in China all their life. They had a happy life until they had the forced abortion. They come to the United States legally on tourist visa and they filed the application for asylum with holding of removal in the protection under the Convention Against Torture. The IJA and BIA denied their petition and their application based on the adverse credibility finding and the insufficient corroboration of documents. The BIA also denied the withholding of removal solely based on the adverse credibility finding. And that was, I believe, it's a reversible error because this Court has held in the case of Aguila, it's Tocco's session, this Court's 2017 case, this Court held that negative credibility finding does not automatically bar withholding of removal. In that case, the Court find irrespective of the supportability of the adverse credibility finding, remind is required for the BIA to consider the document evidence and the adverse credibility would not automatically dorm a crime of withholding. And in this case, the Board made a similar mistake by denying the petitioner's withholding of removal solely based on the adverse credibility finding. The petitioner similarly in this case submitted multiple documents to prove their life and freedom would be threatened if returned to China because they would want more children than the government allowed. But disrespected the sufficiency of the documentation, the BIA just categorically declined to consider that application solely based on adverse credibility finding. So I think that the Court should make that the case just on that base alone. Come to the credibility finding, adverse credibility finding. The BIA did not support its adverse credibility finding by any evidence but the view of the evidence of the IJ. If you honest look at the record, there is no concrete evidence to support any of the findings, but the IJ's extensive negative view of each piece of evidence. For example, for the demeanor finding, the IJ find the petitioner declined to take a break is something against her. That's irrational and unreasonable because if the petitioner did take a break, the IJ could find the same way. So there is no reason. Counsel, didn't the BIA distance itself from those demeanor findings? It seemed to be, well, we cannot read their mind, but they explicitly pointed out, I thought, that they were not going to consider the demeanor observations of the IJ and instead focused on aspects of your client's testimony about the way in which she interacted with her obstetrician gynecologist in this country and not disclosing to her doctor the forced abortion procedure despite her desire to be pregnant. The IJ seemed to think it incredible that she would not share that very relevant experience with her doctor. Didn't the BIA really focus on those aspects of your client's testimony that troubled the IJ? But that seemed to be the focus of the BIA, not demeanor. I agree, Your Honor. I think the BIA did not hold the demeanor as a base to support the adverse credibility finding. It does rest the finding at least substantially on the impossibility of the testimony regarding about the doctor encounters. And that promise, Your Honor, is based on the same as another thing, the basis, the promises of it's impossible for her not to talk to her doctor about the previous abortion. There's no basis for that as well. I mean, why the judge did not give any specific coaching the reason say why somebody has to talk about it. That is the promise. She has to talk about why you did not talk about it. Well, my assumption is that when asked to give an accurate medical history, she didn't do so. And it sounded like the board thought that when you're talking about fertility, knowledge of a prior abortion would be relevant to her treatment and thus because she was not forthright with her doctor that she was therefore not credible. It seemed to me that it was doubt as to whether she had even had a forced abortion. Yes, I think Your Honor, the BIA also reaffirmed that on the same base about the impossibility. She did not talk to the doctor about the previous abortion because she's trying to get pregnant again. And she even had a second abortion due to the ectopic pregnancy. And that promise is on the second abortion of ectopic pregnancy termination has an inherent risk. But there is no evidence to prove there is a risk for the treatment of ectopic pregnancy, Your Honor. And if the judge or BIA board take an administrative notice about how an ectopic pregnancy is being treated in this country, they may find it different. And the government actually stated very forcefully about this notion of risk of termination of her second pregnancy. In their brief, they said that the agency reasonably determined that it was impossible the U.S. medical doctor would not inquire about the document and the relevant medical history of patient prior perform such an invasive surgical procedure as an abortion. And it went on to say it was reasonable for the agent to determine it's impossible that Chen did not, who is educated, allegedly struggling with infertility for four years and undergoing a surgical procedure to have an ectopic pregnancy abort would not reveal her gynecologist that she had a previous abortion. But that promise has no evidence to support because there is no evidence saying the petitioner Chen, she terminated her ectopic pregnancy by surgical procedure because there's no medical document was submitted. There is no such thing. And the IJ did not inquire how did she terminate the ectopic pregnancy, only say, did you have abortion? She says yes. But to abort the ectopic pregnancy is not always by surgical procedures. And in this case, there is no evidence to support that promise and that assumption. Counsel, you're out of time. Why don't you take a minute to wrap up? And just during that time, maybe the court will have additional questions, but why don't you take a minute and wrap up? Yes, Your Honor. In this case, we believe the BIA made the mistake finding the implausibility of the testimony because there's no basis for it, no evidence to support any of that findings. In addition, the BIA is withholding of removal denial was not supported by any evidence or any consideration of evidence. Therefore, we ask this court to remind this case and vacate the decision. If you would now mute your audio and your camera, hear from Ms. Pratt. Thank you, Your Honor. Good morning, Your Honors. May it please the court. Sharice Pratt for the respondent, Merrick Garland. The court should deny the petition for review and uphold the agency's adverse credibility finding. The finding is supported by specific and cogent reasons, particular findings, and the record as a whole. The agency looked at the totality of circumstances, including the petitioner's education level. She's college explored traditional medicine. Why would that necessarily cause her to disclose a trauma to her OBGYN? Well, when she was seen by her doctor and the doctor inquired about her medical history, that is normally something that someone would reveal, especially because it was less than two years earlier. It was in 2013. She was having the ectopic pregnancy in 2015. Is that a reasonable inference that that is something that someone would normally reveal a trauma like that? What makes that inference reasonable? Because the petitioner disclosed that she told the gynecologist about the IUD insertion, and the IUD insertion happened at the same time as the forced abortion. So the IUD insertion caused her to have lasting effects? The IUD fell out one month later in June. But didn't she testified that she continued to have she did testify that she continued to have bleeding afterwards. And when her doctor inquired about her medical history, and she said that she disclosed the IUD procedure, which was part of the same procedure as the forced abortion at the same time on the same table. It just wasn't plausible that she would disclose one thing and not another. And then as her explanations say, she lacked the poise, the articulation, she did not know, her reasons given were not plausible. So the agency considered her, you know, the totality of circumstances, her education, the testimony, the explanations, the lack of corroboration, and they found that she did not meet her burden of proving that she had actually had a forced abortion in China, which is the reason why she was seeking relief and protection. So counsel, I think both the IJ and the BIA also said that there were these risks that that would apply to her. And therefore, it's not plausible that she wouldn't disclose. But I didn't see any support for that in the record. Is that just something that everybody knows? I mean, if her doctor asked for her medical history, but did not specifically inquire with respect to an abortion, creating additional risks, how is it that the IJ and the BIA are able to draw that conclusion? Or as I think your opponent described it in the briefing, you know, it was based on assumptions about the doctor-patient relationship that may not, I mean, I just didn't see the support in the record for it. You did not see the support in the record for? That it would be important to disclose the prior trauma because of the increased risk or the attendant risks that were there. I mean, they specifically said that, but how do they know? Well, when you're faced with an ectopic pregnancy, that is life-endangering. If the fallopian tube ruptures, I think that's common knowledge. And so she had to get an abortion because of that. And before you have a medical procedure, any medical procedure doesn't have to be an abortion, a doctor takes your history. So she disclosed the history of the forced IUD, but she didn't disclose the forced abortion, although it was one procedure. So they found that implausible because she's seeking relief based on an allegedly forced abortion. So, and then her explanation that she told the doctor, but the doctor didn't memorialize it in her notes about the IUD insertion, that was also implausible. How could she be so certain that the doctor did not memorialize it in her notes? And then she didn't supply any of her medical records from the United States, despite saying that she has a gynecologist named Lucy, that she has a family doctor named Dr. Chan, and that she is seen every year for annual checkups. So the agency found that she could have provided these records. She could have requested an extension of time, anything, and she didn't. So looking at the totality of circumstances, the agency entered the adverse credibility determination, and it is supported by the record. The counsel on the adverse credibility determination, as was noted in our colloquy with opposing counsel, that the BIA very specifically distanced itself from the demeanor reliance of the IJ in finding, making an adverse credibility determination. It strikes me as somewhat odd that when you have all of these factors contribute to the adverse credibility determination of the IJ, the BIA is then asked basically to determine whether that adverse credibility determination was clearly erroneous. It distanced itself from a critical part of the adverse credibility determination made by the IJ, and nevertheless, concludes it was not clearly erroneous, relied on only a part of the adverse credibility analysis of the IJ. Is the BIA permitted to do that, to sort of pick and choose in that way, distance itself from what was a critical part of the IJ's analysis, rely on just another part of it, and say, well, it wasn't clearly erroneous. Can the BIA do that? Yes, the BIA is not required to uphold everything that the immigration judge finds, but the BIA did not distance itself 100% from the demeanor finder. It only said it wasn't adopting the pauses because the immigration judge hadn't said that on the record, anything about the pauses. The BIA did note her quick change in composure when she lost her composure, she was offered a minute or two, and she declined, and she quickly regained it. So, the BIA noted that, but they disregarded the long pauses on cross-examination, that part of the demeanor find, because it wasn't documented in the transcript. You know, this whole reliance on demeanor, I think, is very problematic. I mean, here you have an individual, the IJ knows nothing about that person's history, knows nothing about how they behave in pressure situations, and yet attaches great significance to what may be a perfectly reasonable response to an unfamiliar setting, the courtroom setting, given everything that's at stake, the traumatic history, and yet this overriding significance is attached to long pauses, nervousness at one moment, not at the next. Without knowing more about the person and their history and how they behave, how is it reasonable to attach such significance to displays of nervousness or being careful in what you say? Those strike me as perfectly normal human responses to high-stress situations. It's hard to understand how a fact finder can attach such significance to what seemed like perfectly normal human responses to stress in a high-pressure situation. Well, in Wen Feng Liu, this court said that determining credibility is a matter of sound judgment. The immigration judge actually heard the testimony and could rely on common sense and sound judgment in evaluating the testimony as a whole under the totality of circumstances, considering her education and her background, the way she testified during the whole course of the merits hearing. Well, this may be a large issue. I just think we make such a big deal about demeanor in fact finding, and I think there's a real legitimate ground for questioning the value of that kind of reliance, but as I said, maybe that's a larger issue. Sorry. Even setting aside the demeanor, look at the lack of corroboration and the implausible testimony. It's the whole record. It's not just one part. Thank you, counsel. Thank you, your honors. If you would mute your audio and your camera, and Ms. Yang, if you would come back in. Thank you, your honors. Sarah Yang for the petitioners. I want to rebut one point about this impossibility finding the board relied. The board state the immigration judge adequately considered the respondents' explanations regarding the plausibility of her testimony as a way to support its decision, but actually the immigration judge only considered one of two explanations the petitioner offered. The petitioner said two things. One is maybe out of ignorance, another because that's the experience she did not want to talk about, and the immigration judge and the board were completely silent on that explanation. And about the government's contention about the common sense, this is a medical matter. I don't think a medical matter is—medical matter is not a common matter. It cannot be using common sense as a basis to support such an important decision, saying you are not credible because you did something or you did not do something. That's just not fair. That's all I have to say. Thank you. That concludes argument in this case. Attorney Yang and Attorney Pratt, you should disconnect from the hearing at this time.